## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MARY R. JOHNSON,

     Plaintiff,

                                   CASE NO. 3:16-cv-00178-J-MCR

V.

SPECIALIZED LOAN SERVICING, LLC,

     Defendant.

_____/

### JOINT PRETRIAL STATEMENT

Plaintiff, MARY JOHNSON ("Plaintiff"), and Defendant, SPECIALIZED LOAN SERVICING, LLC ("Defendant" or SLS), by and through their undersigned counsel, and pursuant to Local Rule 3.06(c), hereby file this Joint Pretrial Statement and state as follows:

### I. Basis of Federal Jurisdiction:

This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has claimed, among other things, that Defendant allegedly violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).  Additionally, this Court has supplemental jurisdiction over Plaintiff's other state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the RESPA and FDCPA claims that they form part of the same case or controversy.

### II. Concise Statement of the Nature of the Action:

All of Plaintiff's claims in this action relate to a dispute that arose after she entered into a trial loan modification agreement in an attempt to avoid losing her home to foreclosure. She

alleges that Defendant Specialized Loan Servicing (SLS) improperly repudiated the binding loan modification agreement even though she complied, leading it to resume the prosecution of the foreclosure lawsuit. With the limited and partial exception of her FDCPA claim, all other claims in this action relate to SLS's rejection of the loan modification and response to related communications.

SLS maintains that a binding loan modification was not entered into between Plaintiff and SLS in November 2015 because Plaintiff's counsel failed to properly return the necessary documents to effectuate a modification within the required time. SLS also maintains that many of Plaintiff's inquiries failed to meet the definition of a QWR under RESPA and are therefore non-actionable. Notwithstanding, SLS claims that it researched and investigated Plaintiff's inquiries and properly responded to the same as required by RESPA. SLS also maintains that it never intentionally contacted Plaintiff while having actual knowledge that Plaintiff was represented by counsel with respect to the debt and without consent from Plaintiff or her counsel. As such, Defendant denies that it is liable to Plaintiff for any amount claimed.

### III. Brief, General Statement of Each Party's Case

#### A. Plaintiff

After Plaintiff fell behind on her mortgage payments, the mortgagee brought a foreclosure lawsuit against her in state court. Although it was not a formal party to the foreclosure lawsuit, SLS, as servicer, was fully responsible for directing the foreclosure litigation on Plaintiff's behalf.

While the foreclosure was pending, Plaintiff obtained a loan modification from SLS acting on the mortgagee's behalf.  Plaintiff made all the required payment trial payments and returned the signed loan modification agreement by certified mail.  Nevertheless, SLS later

2

began rejecting her payments and attempted to proceed with the foreclosure sale. Unaware of the reason behind SLS's decision to resume the foreclosure, Plaintiff, through counsel, made both formal and informal inquiries to SLS, its foreclosure counsel, and the Consumer Financial Protection Bureau. SLS responded to most (but not all) of Plaintiff's counsel's written inquiries. In each response, SLS insisted that it resumed its efforts to complete the foreclosure because it wrongly believed that Plaintiff failed to return the documents necessary to complete the loan modification with her signature. But during this litigation, Plaintiff confronted SLS with both a certified mail receipt and SLS's own business records showing that SLS certainly did receive loan modification documents and payment from Plaintiff at the relevant time. In response, SLS changed its position and now insists that the documents that Plaintiff returned were copies of the required documents. SLS further claims that the "copies" were unacceptable, but it never notified Plaintiff that the documents she sent were insufficient. Plaintiff only learned that there was an issue after SLS refused to accept payments that she subsequently submitted in the amount contemplated by the modification. Plaintiff only learned of the alleged copies/originals distinction in the later stages of this litigation.

Importantly, SLS never mentioned anything about the documents being copies (as opposed to originals) when it sent its legally required responses to *all* of Plaintiff's "Notices of Error" invoking the RESPA/Regulation X error resolution procedures, or even in its sworn interrogatory responses in this case. To the contrary, all of SLS's written statements can be only be understood as denying that SLS ever received *any* version of the loan modification documents. SLS's new explanation was clearly invented for purposes of this litigation. But even if SLS's version of the facts were accurate, this alternative explanation only proves that SLS failed to comply with both the investigation requirements and the response requirements

3

mandated by RESPA and its implementing regulation. ("Regulation X" 12 C.F.R. §1024.41).   If SLS had checked its own computerized records in response to any of Plaintiff's correspondence specifically invoking the RESPA/Regulation X error resolution procedures, it would have seen that it had indeed received relevant documents at the appropriate time. RESPA and Regulation X required SLS to disclose the "reason or reasons" behind its determination that there was no error. SLS's failure to mention the copies/original distinction at the time it provided its multiple written responses compels the conclusion that, even if SLS had conducted a reasonable investigation, SLS nevertheless violated RESPA by failing to provide an accurate statement of the "reason or reasons" why it now claims that no error occurred as RESPA and its implementing regulation require. SLS's breach of its RESPA duties constitutes negligence per se under Florida law.

The confusion surrounding the loan modification documents was exacerbated because SLS repeatedly communicated directly with Plaintiff when she was represented by Jacksonville Area Legal Aid (JALA) in direct violation of federal law. No representative of JALA had ever consented to direct communication between SLS and Plaintiff during the relevant time period. The communication directly between SLS and Plaintiff undermined JALA's efforts to assist Plaintiff in navigating the loan modification process.   While SLS denies that it was aware of JALA's involvement, its loss mitigation staff were communicating with JALA employee Karen Weaver the entire time.   Similarly, JALA had appeared in the foreclosure litigation and sent correspondence on Plaintiff's behalf before many of the phone calls occurred.  SLS's knowledge is irrelevant in any event because the FDCA is a strict liability statute, except to the extent that the bona fide error defense may apply.  Bona fide error however is an affirmative defense, which SLS has not pled.

Plaintiff maintains that she fully complied with the requirements necessary for her to obtain a permanent loan modification, - including returning the required signed original documents along with the first payment enclosed in the same envelope. But even under SLS's version of events, the alleged failure to return the original documents would not nullify the modification agreement. To the contrary, under Florida law, both parties remained bound to the agreed upon terms.  In the factually similar case of *Nowlin v. Nationstar Mortgage, LLC*, 193 So.3d 1043 (Fla. 2d DCA 2016), Florida's Second District Court of Appeal enforced a loan modification were, as here, the borrower made a bona fide effort to return the required documents and submitted the required payments, but the servicer denied having received the required loan modification documents. Similarly in *Kuehlman v. Bank of America*, 177 So.3d 1282 (Fla. 5th DCA) Florida's Fifth District Court of Appeal held that the borrower's admitted late return of the required documents did not render the loan modification unenforceable where the lender received and accepted all of the related payments.   These state law contract cases compel the conclusion that, even if the Court were to accept SLS's version of the facts, the original loan modification was nevertheless valid and enforceable. Accordingly, SLS's resumption of its efforts to foreclose while Plaintiff was making the modified payments was a violation of the Florida Consumer Collection Practices Act (FCCPA) and the privately enforceable loss mitigation requirements found in 12 C.F.R §1024.41 and incorporated into RESPA.

Through counsel, Plaintiff attempted to invoke the RESPA/Regulation X loss mitigation procedures on at least five separate occasions in connection with SLS's wrongful repudiation of the loan modification and resumption of the foreclosure litigation. Each time, SLS insisted that no error occurred because Plaintiff never returned the required documents. SLS's

correspondence can be understood only as incorrectly insisting that Plaintiff never returned *any* documents. SLS never mentioned the distinction between copies and originals that now forms the basis for its defense until the late stages of this litigation.

SLS attempts to characterize its persistent failure to comply with its investigation and response obligations under RESPA as a "technical violation." While SLS may have a point that the RESPA/Regulation X error resolution regime is somewhat complicated and technical, that is not a defense to compliance. Since SLS has chosen to engage in the business of servicing federally related mortgage loans, it cannot properly attempt to avoid the consequences flowing from its violation of federal statutes and an administrative regulation that govern mortgage servicing by attempting to minimize the statutes' and regulation's importance. Furthermore, while the statutes and regulation may be technical, the violation in this case is not. SLS failed to reasonably investigate or appropriately respond to Plaintiff's concerns relating to its erroneous repudiation of the loan modification. This was a serious error that could easily have resulted in Plaintiff being wrongfully evicted from her home despite her compliance with the modification. SLS similarly made false and misleading statements about the reason why it purported to repudiate the loan modification in writing and unlawfully placed phone calls to a consumer who it knew to be represented by counsel without counsel's consent.

Inexplicably, SLS attempts to blame Plaintiff's counsel for "manufacturing a technical violation" by sending the RESPA correspondence in the first place. While this sort of unprofessional rhetoric has become the norm in consumer financial services litigation, it is especially ridiculous here. When the issue first arose, Plaintiff was represented only by Jacksonville Area Legal Aid ("JALA"), a public interest law firm that provides pro bono legal and related service to individuals who are unable to afford representation. JALA was also

1322492.1

assisting Plaintiff in the foreclosure and clearly had a legitimate interest in ascertaining the reason why SLS was continuing to pursue the foreclosure lawsuit against Plaintiff even though she was making the modified payments. By the same token, it was hardly unreasonable or improper for counsel to attempt to demonstrate to SLS that its persistent assertions that Plaintiff had not returned the loan modification documents were demonstrably incorrect. Plaintiff's counsel clearly cannot be blamed for SLS's repeated failure to conduct an appropriate investigation or to provide an adequate, or even an accurate, response. Notably, Plaintiff brought this action in state small claims court. SLS chose to remove the matter to this Court and mount an aggressive defense. SLS's recent attempt to downplay Plaintiff's claims by labeling its own misconduct as "technical" cannot be reconciled with its decision to dramatically expand the costs and burdens associated with this litigation by removing the small claims case to federal court.

SLS correctly points out that it later offered Plaintiff a substitute loan modification shortly after she sued in small claims court. However, the terms of that loan modification would have required Plaintiff to acquiesce to a material increase in the amount of debt encumbering her home. The JALA attorneys who were assisting Plaintiff sought an explanation from the attorneys who were handling the foreclosure for this discrepancy, but never received any such explanation. Plaintiff similarly raised this issue in her November 2016 RESPA Notice of Error, but SLS glossed over that concern in its response.

There is no logical reason why SLS's offer of the proposed replacement loan modification would give rise to any defense in this action. Even if Plaintiff had accepted the substitute loan modification, she still would have been negatively impacted by the increased debt relative to the prior modification and foreclosure related fees and charges assessed to her account following the post-modification resumption of the foreclosure litigation. It therefore would still

7

have been necessary for Plaintiff to attempt to invoke the RESPA/Regulation X error resolution procedures to seek redress. By the same token, SLS would have been obligated to respond in the manner that RESPA requires regardless of any intervening loan modification. There is no reason to believe that, had Plaintiff accepted the substitute loan modification offered in 2016, anything about this case would have been materially different. Ultimately, SLS did agree to honor the terms of the original 2015 loan modification, but only after substantial litigation before this Court following removal.

As a result of the belated implementation of the loan modification, SLS has corrected much of the damage that it prior servicing errors caused. SLS's position that this eliminates any "active dispute" is inconsistent with the 11th Circuit's recent discussion of RESPA damages in *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246–47 (11th Cir. 2016), where it explained that:

> ...a servicer notified of an account error could always avoid RESPA liability just by claiming it thought there was no error and correcting the error going forward. According to Nationstar, a RESPA cause of action would not accrue in this situation—despite the abusiveness of the tactic. We reject such a cramped reading of RESPA. When a plaintiff plausibly alleges that a servicer violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous *1247 charges, she has been cognizably harmed.

> *Id.* at 1246-47

Just as in *Renfroe*, SLS cannot avoid RESPA liability by belatedly correcting the errors on Plaintiff's account, after repeatedly refusing to do so in response to Plaintiff's multiple Notices of Error. Nor can SLS change the fact that it resumed the foreclosure litigation while Plaintiff was complying with the terms of her loan modification. Similarly, the subsequent modification offer did not change SLS's prior false and misleading statements to Plaintiff

8

concerning the reason why it repudiated the loan modification and unlawfully communicated with her when she was represented by counsel in violation of the FDCPA.

### B. Defendant

Plaintiff defaulted on a residential mortgage in November 2009. Plaintiff sought to modify her loan and was ultimately approved for a permanent loan modification. Plaintiff and SLS executed the same in March 2017, while this litigation was pending. Presently, Plaintiff is current and making monthly payments to SLS, who continues to service Plaintiff's mortgage. As such, there is not an active dispute between SLS and Plaintiff with respect to her mortgage or a modification thereof.

Rather, the claims at issue in the present case all involve alleged technical violations of consumer protection statutes related to a failed loan modification attempt in which SLS did nothing wrong. These claims are being pursued by counsel retained by Plaintiff during the loan modification process who inhibited Plaintiff from modifying her loan and engaged in a letter sending campaign designed to manufacture claims against SLS. Specifically, Plaintiff retained local counsel in the form of Jacksonville Area Legal Aid, Inc. and outside counsel from South Florida in Jeffrey Golant, who will collectively be referred to as "Plaintiff's Counsel."

Specifically regarding the failed modification attempts at issue, Plaintiff successfully completed a trial payment plan and SLS sent a permanent modification offer to her in September 2015. The permanent medication offer contained explicit conditions, including deadlines, with which Plaintiff must have complied in order to receive the permanent modification. SLS thereafter attempted to contact Plaintiff roughly 40 times regarding the loan modification prior to the deadline expiring. Plaintiff's Counsel failed to meet the conditions and deadlines, resulting in the permanent modification offer being denied.

1322492.1

After failing to properly accept the September 2015 permanent modification offer, Plaintiff's Counsel began sending several letters to SLS in a futile effort to manufacture a technical violation of the Real Estate Settlement Procedures Act ("RESPA"). Nevertheless, SLS properly responded to all of Plaintiff's Counsel's letters and even offered Plaintiff a second opportunity to modify her loan in January 2016. During this process, Plaintiff expressly told SLS she wanted to execute the January 2016 permanent modification offer, but her attorneys directed her not to do so.

After preventing Plaintiff from signing the January 2016 permanent modification offer, Plaintiff's Counsel again proceeded to send multiple letters to SLS in a failed attempt to manufacture a technical RESPA violation. SLS properly responded to all of these letters, despite the duplicative and disingenuous nature of the same. Regardless, Plaintiff's Counsel thereafter filed the instant lawsuit, even after Plaintiff was ultimately modified by SLS.

### IV. List of All Exhibits and Rule 5.04 Substitutes to be Offered at Trial with Notation of All Objections Thereto:

*A. Plaintiff*

Plaintiff's Exhibit List is attached hereto as Exhibit C, and Defendant's objections thereto are noted therein.

*B. Defendant*

Defendant's Exhibit List is attached hereto as Exhibit A and Plaintiff's objections thereto are notated therein.

### V. A List of All Witnesses Who May Be Called at Trial:

*A. Plaintiff*

1.    Plaintiff Mary Johnson

2.    Karen Weaver, former JALA employee

3.      Fred Korb, SLS corporate representative.

4.      James Kowalski, JALA executive director

5.      Brendan McDowell, Esquire, Quintairos, Prieto, Wood & Boyer, P.A., 255 S Orange Ave Suite 900, Orlando, Florida 32801-3454, state court trial counsel

### B. Defendant

Defendant's Witness List is attached hereto as Exhibit B.

### VI. A List of All Expert Witnesses Including, as to Each Such Witness, a Statement of the Subject Matter and a Summary of the Substance of His or Her Testimony:

None – neither party has disclosed any expert witnesses.

### VII. In Cases in Which Any Party Claims Money Damages, A Statement of the Elements of Each Such Claim and the Amount Being Sought with Respect to Each Such Element[1]:

**Statutory damages:** Both the FCCPA and FDCPA allow the recovery of statutory damages. Plaintiff seeks an award of $1000 each under each statute for a total award of $2000.

**Emotional distress damages:** RESPA, the FCCPA and the FDCPA allow the recovery of emotional distress damages. Plaintiff submits that an award of emotional distress damages is appropriate but cannot be segregated by claim. Reported cases suggest that that appropriate range for such an award would be between $5,000 and $50,000.

**Out-of-pocket expenses:** Plaintiff incurred expenses for postage in the amount of $8.55 when she sent her final Notice of Error. Plaintiff would not have incurred these expenses if SLS had appropriately responded to her earlier correspondence and had not attempted to re-reset the

---

[1] This portion of the pretrial statement was prepared solely by Plaintiff without input from Defendant and therefore Defendant reserves the right to object to any content proffered by Plaintiff that is not framed by the Second Amended Complaint and does not agree to try by consent any issues made unilaterally by Plaintiff in the pretrial statement.

foreclosure sale while she was making the modified mortgage payments. Accordingly, she seeks reimbursement of these expenses as damages in this action.

**Punitive Damages:** Punitive damages are available under the FCCPA and the Florida common law negligence claim. Since these are state law claims, the availability of punitive damages is governed by §768.72(2), Florida Statutes. The statute authorizes recovery of punitive damages when the defendant's conduct constitutes either "gross negligence" or "intentional misconduct", and requires that the evidence must meet the "clear and convincing" standard. Plaintiff maintains that SLS's continued prosecution of the foreclosure, especially after JALA notified SLS of its error in connection with its handling of the loan modification, constitutes "intentional misconduct" warranting an award of punitive damages under the FCCPA. Plaintiff further alleges that SLS's insufficient response to her RESPA Notices of Error reflects gross negligence and punitive damages are therefore appropriate. The goal of punitive damages is to punish gross negligence and to deter such future misconduct" *See E.g. Goodin v. Bank of Am., N.A.,* 114 F. Supp. 3d 1197, 1216 (M.D. Fla. 2015) citing *See Myers v. Cent. Florida Investments, Inc.,* 592 F.3d 1201, 1216 (11th Cir.2010). Thus, a punitive damages award must be large enough to get the wrongdoer's attention, otherwise the violation becomes an "acceptable 'cost of doing business.'" *Id.* Since SLS is a sophisticated business organization with sufficient resources to service federally related mortgage loans, any punitive award in this case would have to be substantial to accomplish that purpose.

**Foreclosure related fees and finance charges:**   SLS charged Plaintiff's account for attorneys' fees and litigation costs that were incurred as a direct result of its decision to resume the prosecution of the foreclosure. However, in response to Plaintiff's last Notice of Error, SLS removed those costs. Plaintiff submits that under the 11th Circuit's analysis in *Renfroe v.*

12

*Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 – 1246 (11th Cir. 2016), these charges constitute

actual damages for purposes of establishing the RESPA violation.   Plaintiff however does not

seek any double recovery.

### VIII. List of All Depositions to be Offered in Evidence at Trial (as Distinguished from Possible Use for Impeachment), Including a Designation of the Pages and Lines to be Offered from Each Deposition:

#### A. Depositions to be Offered by Plaintiff

Deposition of SLS Corporate Representative Fred Korb.

#### B. Depositions to be Offered by Defendant

Defendant intends to offer the following deposition testimony into evidence at trial:

|      |                                                          |
|------|----------------------------------------------------------|
| i.   | Deposition of Karen Weaver, dated March 16, 2017.        |
| ii.  | Deposition of Mary Johnson, dated March 16, 2017.        |
| iii. | Deposition of Fred Korb, dated March 21, 2017.           |

### IX. A Concise Statement of Those Facts Which are Admitted and Will Require No Proof at Trial, Together with Any Reservations Directed to such Admissions:

1. The subject mortgage is "federally related mortgage" and therefore RESPA applies.

2. SLS services the Plaintiff's mortgage loan on behalf of a third party.

3. SLS began servicing Plaintiff's mortgage loan on December 6th, 2011.

4. At the time that SLS began servicing the loan, it regarded the loan as being delinquent.

5. Plaintiff had a foreclosure final judgment entered against her on March 2nd 2015.

6. Plaintiff submitted a loss mitigation application to SLS for review on April 22, 2015.

7. Jacksonville Area Legal Aid assisted Plaintiff with the submission of the April 22nd, 2015 loss mitigation application.

8.      SLS approved Plaintiff's application for a loan modification on June 2nd, 2015.

9.      The loan modification for which Plaintiff was approved was a "Home Affordable Modification" or "HAMP" modification offered pursuant to a program involving the United States Treasury.

10.     The HAMP modification required Plaintiff to make three "trial payments" before the modified terms would become permanent.

11.     Plaintiff made the required trial payments.

12.     SLS sent Plaintiff an offer to enter into a permanent loan modification on September 22, 2015.

13.     SLS made phone calls directly to Plaintiff regarding the September 22, 2015 permanent loan modification offer.

14.     SLS received documents from Plaintiff related to the loan modification on November 17th, 2015.

15.     That correspondence included an $808 money order issued by VyStar Credit Union.

16.     SLS sent a letter dated December 14th, 2015 advising that her loan modification had been denied.

17.     The foreclosure plaintiff filed a motion to re-set the foreclosure sale in state court on December 22nd, 2015.

18.     Plaintiff Mary Johnson, through Jacksonville Area Legal Aid, served a response to that motion on January 4th, 2016.

19.     On January 4th, 2016, counsel for Plaintiff sent SLS correspondence claiming to be a "Notice of Error."

20.     According to its internet site, SLS's designed address for RESPA Notices of Error is  PO Box 630147, Littleton, CO. 80163-0147.

21.     The January 4, 2016 correspondence sent by Plaintiff's counsel and entitled a "Notice of Error" was not sent to the address identified on SLS's internet site; rather, it was sent to SLS's foreclosure counsel. Accordingly,  Plaintiff does not assert that the failure to respond to this particular letter was a violation of RESPA

22.     SLS made  telephone calls directly to Plaintiff regarding the January 20, 2016 permanent loan modification offer.

23.     On May 12th and 20th, 2016 Plaintiff, through counsel, sent correspondence to SLS at the address identified on its internet site for RESPA Notices of Error.

24.     SLS responded to that correspondence by letter dated June 20th, 2016.

25.     Plaintiff, through The Law Offices of Jeffrey N. Golant, P.A. sent correspondence to SLS at the address identified on its internet site on November 28th, 2016.

26.     On March 21, 2017, a permanent loan modification was executed by Plaintiff and SLS.

27.     On March 21, 2017, due to the permanent loan modification being executed, SLS caused the final judgment of foreclosure against Plaintiff to be vacated and the foreclosure action to be voluntarily dismissed.

### X.  Concise Statement of Applicable Principals of Law on Which There is Agreement:

None.

### XI.  Concise Statement of Those Issues of Fact Which Remain to be Litigated (Without Incorporation by Reference to Prior Pleadings and Memoranda):

### A.    Plaintiff's Statement

1322492.1

1.    Whether Plaintiff sustained RESPA damages in the form of inappropriate foreclosure related fees and costs arising from the improper resumption of the foreclosure, postage expenses associated with sending her RESPA correspondence, and emotional distress following SLS's resumption of the foreclosure litigation and refusal to discontinue the prosecution of the foreclosure litigation after receiving Plaintiff's RESPA correspondence.

2.    Whether SLS's statements in its December 14th, 2015 denial letter regarding its decision to repudiate the loan modification were false or misleading.

3.    Whether SLS's statement in its April 29th, 2016 letter to Plaintiff regarding her efforts to obtain a loan modification were false or misleading under the "least sophisticated consumer" standard that governs FDCPA communications.

4.    Whether the November 2015 correspondence that Plaintiff sent to SLS contained original loan modification documents or copies? [2]

5.    Whether SLS conducted a reasonable investigation following its receipt of any of Plaintiff's Notices of Error.

6.    Whether any of SLS's response to Plaintiff's RESPA correspondence accurately described the "reason or reasons" behind its determination that no error occurred.

7.    Whether SLS's statements in its December 14th, 2015 denial letter regarding its decision to repudiate the loan modification were false or misleading under the "least sophisticated consumer" standard that governs FDCPA communications.

8.    Whether SLS's statement in its April 29th, 2016 letter to Plaintiff regarding her efforts to obtain a loan modification were false or misleading under the "least sophisticated consumer" standard that governs FDCPA communications.

9.    Whether, by resuming the foreclosure while Plaintiff was submitting the modified payments, SLS claimed, attempted, or threatened to enforce a debt when SLS knew that the debt was not legitimate, or asserted the existence of a legal right when SLS knew the right did not exist.

10.   Whether, by assessing additional foreclosure related litigation fees to Plaintiff's account while she was submitting the modified mortgage payments, SLS claimed, attempted, or threatened to enforce a debt when Defendant knew that the debt was

---

[2] Plaintiff maintains that even if the factual issue is resolved in favor of SLS's position, the loan modification was nevertheless valid and enforceable under *Nowlin v. Nationstar Mortgage, LLC*, 193, So.3d 1043 (Fla. 2d DCA 2016) and *Kuehlman v. Bank of America*, 177 So.3d 1282 (Fla. 5th DCA).

1322492.1

not legitimate, or asserted the existence of a legal right when SLS knew the right did not exist.

**B.      Defendant's Statement**

The issues of fact to be decided as to all Counts of the Second Amended Complaint include the following:

1.      Whether Plaintiff complied with the terms of the September 22, 2015 permanent loan modification offer sent by SLS to Plaintiff.

2.      Whether there was a valid loan modification entered into between SLS and Plaintiff on or about November 16, 2015.

Additionally, issues of fact which remain to be decided with respect to Count II of the Second Amended Complaint include the following:

1.      Whether Plaintiff ever provided SLS with notice that Plaintiff was represented by Plaintiff's Counsel with respect to a debt and no longer wished to be communicated with directly.

2.      If SLS did have actual knowledge that Plaintiff was represented by counsel with respect to a debt and no longer wished to be communicated with directly, whether Defendant contacted Plaintiff directly with regard to the collection of a debt.

Additionally, issues of fact which remain to be decided with respect to Count III of the Second Amended Complaint include the following:

1.      Whether any correspondence relied on by Plaintiff in the Second Amended Complaint was a "Qualified Written Request" as defined by RESPA.

1322492.1

2.      Whether any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint was related to "servicing," as defined by RESPA.

3.      Whether any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint was duplicative, such that it required no response from SLS.

4.      If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response under RESPA, whether SLS performed a reasonable investigation into any alleged error.

5.      If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response and SLS failed to meet its burden under RESPA, whether Plaintiff suffered any of the actual damage alleged in paragraph 64 of the Second Amended Complaint as a result thereof.

6.      If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response and SLS failed to meet its burden under RESPA, whether Plaintiff is entitled to statutory damages under RESPA.

## XII. Concise Statement of Those Issues of Law Which Remain for Determination by the Court (Without Incorporation by Reference to Prior Pleadings and Memoranda):

### A. Plaintiff's Statement

1.      If the Court finds that the loan modification documents that Plaintiff sent to SLS in November of 2015 were copies and not originals, whether that rendered the loan modification agreement void under Florida law.

2.      Whether SLS has a valid basis to challenge, through its First Affirmative Defense, Plaintiff's Article III standing in light of her allegations that SLS violated both state and federal law causing her actual damages, and also entitling her to statutory damages.

3.      Whether, as a non-party to the mortgage, SLS's is entitled to enforce the contractual condition precedent requiring one contracting party to give the other notice of a

breach of the mortgage and an opportunity to cure referenced in SLS's second affirmative defense.

4.  If SLS is entitled to enforce the notice and opportunity to cure provision in the mortgage, whether Plaintiff's RESPA correspondence and other correspondence that Plaintiff's counsel sent to foreclosure counsel complied with the contractual notice requirements.

5.  Whether SLS's third and fourth affirmative defenses are legally sufficient and factually supportable.

6.  Whether a failure to mitigate damages defense is available to a claim brought under RESPA, the FDCPA, or the FCCPA.

7.  Whether, in light of *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246–47 (11th Cir. 2016), a mortgage servicer can correct errors impacting the borrower's account after the statutory response deadline passes and the borrower files suit under RESPA, and then successfully assert that belated correction renders that claim moot.

8.  Whether there is factual support for SLS's contention that it offered Plaintiff a substitute loan modification before the inception of this lawsuit as alleged in its Seventh Affirmative Defense.

9.  If there is factual support for SLS's contention alleged in its Seventh Affirmative Defense that it offered Plaintiff a loan modification prior to the inception of this lawsuit, whether that offer can alter or diminish SLS's obligations arising under the RESPA/Regulation X error resolution regime .

10.  If there is both factual and legal support for SLS's Seventh Affirmative Defense, whether that defense would still be viable if the terms of the replacement loan modification were less favorable than the original terms.

11.  Whether a Notice of Error must relate to servicing in order to be actionable under RESPA in light of the 2014 amendments to RESPA.

12.  If a Notice of Error must relate to servicing, whether the alleged failure to service the loan in the manner required by the modification, and the assessment of post-modification legal fees constitutes "servicing" in light of *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 907 (11th Cir. 2016) and *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246–47 (11th Cir. 2016).

13.  Whether the correspondence that Plaintiff's counsel sent to SLS at the address it designated for receipt of Notices of Error were sufficient to trigger SLS's response and investigation obligations under the RESPA/Regulation X error resolution procedures.

1322492.1

14.    Whether RESPA and Regulation X (12 C.F.R. §1024.41) prohibited the rescheduling of a foreclosure sale after the purported denial of a loss mitigation application, but prior to the deadline to appeal had expired.

15.    Whether Plaintiff "fail[ed] to perform under an agreement on a loss mitigation option" such that SLS violated the prohibition against pursuing a foreclosure sale set forth in 12 C.F.R. §1024.41(g)(3) under the circumstances presented in this case.

16.    For purposes of Plaintiff's negligence claim only whether the SLS's evidence supporting its failure to mitigate damages affirmative defense is legally sufficient.

17.    Whether the debtor or her counsel must notify the debt collector of the consumer's preferences for the FDCPA's restrictions on debt collector communication with represented parties found in 12 U.S.C.§ 1692c(a) to apply.

18.    Whether SLS's had actual or constructive notice that JALA represented Plaintiff by virtue of its involvement in the loan modification, its appearance in the state court foreclosure litigation, and the filing and service of this case in small claims case prior to removal.

19.    Whether, in light of the FDCPA's status as a strict liability statute and the lack of any bona fide error defense in this case, SLS's knowledge or lack thereof concerning JALA's representation Plaintiff is material to the outcome of the claim.

20.    Whether SLS used unfair or unconscionable means to collect or attempt to collect Plaintiff's debt when it added foreclosure related fees to her account after she entered into the loan modification agreement.

21.    Whether SLS claimed, attempted, or threatened to enforce a debt when SLS knew that the debt was not legitimate, or asserted the existence of a legal right when SLS knew the right did not exist, in violation of the FCCPA by continuing its pursuit of the foreclosure sale and assessing foreclosure related litigation charges to her account, after receiving Plaintiff's opposition papers filed in the state court foreclosure litigation, RESPA correspondence, correspondence sent by JALA to foreclosure counsel, and CFPB complaint, notifying SLS about its erroneous repudiation of the loan modification.

**B.   Defendant's Statement**

The preliminary issues of law that apply to all of Plaintiff's claims against SLS in the

Second Amended Complaint include the following:

20

1322492.1

1.      Whether Plaintiff and SLS entered into a valid permanent loan modification in November 2015.

2.      Whether Plaintiff suffered any actual damages related to SLS's conduct alleged in the Second Amended Complaint

3.      Whether Plaintiff has Article III standing.

4.      Whether Plaintiff has satisfied all conditions precedent to filing this action against SLS.

Count I (RESPA Loss Mitigation)

The issues of law to be decided as to Count I of the Second Amended Complaint include the following:

1.      Whether SLS's December 22, 2015 motion to reschedule the foreclosure sale in the underlying foreclosure action is a violation of RESPA.

2.      If SLS violated RESPA by filing the December 22, 2015 motion to reschedule the foreclosure sale in the underlying foreclosure action, whether Plaintiff suffered any actual damages related to said violation as alleged in paragraph 27 of the Second Amended Complaint.

Count II (FDCPA)

The issues of law to be decided as to Count II of the Second Amended Complaint include the following:

1.      Whether Plaintiff complied with the terms of the September 22, 2015 permanent loan modification offer sent by SLS to Plaintiff.

2.      Whether there was a valid loan modification entered into between SLS and Plaintiff on or about November 16, 2015.

3.      Whether SLS made false, deceptive, or misleading representations or means in connection with the collection of Plaintiff's debt when SLS denied the September 22, 2015 permanent loan modification offer.

4.      Whether SLS used unfair or unconscionable means to collect or attempt to collect Plaintiff's debt when SLS denied the September 22, 2015 permanent loan modification offer.

5.      Whether SLS had actual knowledge that Plaintiff was represented by counsel with respect to Plaintiff's debt.

6.      If SLS had actual knowledge that Plaintiff was represented by counsel with respect to Plaintiff's debt, whether SLS communicated with Plaintiff regarding the collection of a debt.

7.      If SLS had actual knowledge that Plaintiff was represented by counsel with respect to Plaintiff's debt and communicated with Plaintiff regarding the collection of a debt, whether SLS had consent from Plaintiff or Plaintiff's counsel to engage in said communication.

<u>Count III (RESPA Error Resolution)</u>

The issues of law to be decided as to Count III of the Second Amended Complaint include the following:

1.      Whether any correspondence relied on by Plaintiff in the Second Amended Complaint was a "Qualified Written Request" as defined by RESPA.

2.      Whether any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint was related to "servicing," as defined by RESPA.

3.      Whether any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint was duplicative, such that it required no response from SLS.

4.     If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response under RESPA, whether SLS performed a reasonable investigation into any alleged error.

5.     If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response and SLS failed to meet its burden under RESPA, whether Plaintiff suffered any of the actual damage alleged in paragraph 64 of the Second Amended Complaint as a result thereof.

6.     · If any of Plaintiff's Counsel's correspondence relied on by Plaintiff in the Second Amended Complaint required a response and SLS failed to meet its burden under RESPA, whether Plaintiff is entitled to statutory damages under RESPA.

Count IV (Negligence)

The issues of law to be decided as to Count IV of the Second Amended Complaint include the following:

1.     Whether SLS owed Plaintiff a legal duty to reasonably investigate her concerns that SLS was pursuing a foreclosure in error.

2.     If SLS owed Plaintiff a legal duty, whether Defendant breached that duty.

3.     If Defendant owed Plaintiff a duty and breached that duty, whether Plaintiff suffered any damages as a result of said breach.

4.     If Defendant owed Plaintiff a duty and breached that duty, and if Plaintiff suffered damages as a result therefrom, whether Defendant was the cause of said damages.

5.     If Defendant owed Plaintiff a duty and breached that duty, and if Plaintiff suffered damages as a result therefrom which were caused by Defendant, whether Plaintiff failed to mitigate her damages.

Count V (FCCPA)

The issues of law to be decided as to Count V of the Second Amended Complaint include the following:

1.     Whether SLS attempted to enforce a debt against Plaintiff that was illegitimate.

2.     If SLS did attempt to enforce a debt against Plaintiff that was illegitimate, whether SLS had actual knowledge that the debt was illegitimate.

3.     If SLS did attempt to enforce a debt against Plaintiff that was illegitimate and had actual knowledge that the debt was illegitimate, whether SLS intentionally did so.

4.     If SLS intentionally attempted to enforce a debt against Plaintiff that was illegitimate and had actual knowledge that the debt was illegitimate, whether Plaintiff suffered any damage as a result of SLS's efforts.

5.     Whether SLS was entitled to foreclose on Plaintiff's property as a result of Plaintiff's default.

## XIII. Concise Statement of Any Disagreement as to the Application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure:

The parties AGREE that the Federal Rules of Evidence and the Federal Rules of Civil Procedure are applicable to this case.

## XIV. List of All Motions or Other Matters Which Require Action by the Court:

None.

24

Respectfully submitted this 3rd  day of January, 2018.

Law Offices of Jeffrey N. Golant, P.A.
/s/ _Jeffery N. Golant_____

Jeffrey N. Golant, Esq.
Florida Bar #: 0707732
7301 Wiles Rd. Ste. 201
Coral Springs, Florida, 33067
Tel: (954) 942-5270
Fax:  (954) 942-5272
Jgolant@jeffreygolantalaw.com


Jacksonville Area Legal Aid, Inc.
/s/ __Lynn Drysdale_____

Lynn Drysdale, Esq.
Florida Bar # 508489
Lynn Drysdale, Esquire
Jacksonville Area Legal Aid, Inc.
126 West Adams Street
Jacksonville, Florida 32202
(904) 356-8371, Ext. 306
lynn.drysdale@jaxlegalaid.org

*Attorneys for Plaintiffs*

McGLINCHEY STAFFORD
 /s/ Derek K. Mountford_____

N. Mark New, II, Esq.
Florida Bar # 0476773
Derek K. Mountford, Esq.
Florida Bar #127172
10407 Centurion Pkwy N., Ste. 200
Jacksonville, Florida 32256
Tel: (904) 224-4449
mnew@mcglinchey.com
dmountford@mcglinchey.com
*Attorneys for Defendant Specialized Loan Servicing, LLC*

# **EXHIBIT A**

| No. | DESCRIPTION | BATES | Objection(s) |
|---|---|---|---|
| 1 | 6/1/2015 Trial Payment Plan offer | 5-11 | |
| 3 | Check stub for June, July, and August payments under TPP | 12 | |
| 4 | 9/22/2015 letter from SLS to Plaintiff enclosing the permanent loan modification | 13-27 | |
| 5 | Copy of what was received by SLS from Plaintiff's Counsel on November 17, 2015 | 28-43 | |
| 6 | 12/14/2015 Denial letter sent by SLS to Plaintiff regarding her permanent loan modification | 44-53 | |
| 7 | 12/23/2015 acknowledgment letter from SLS to Plaintiff | 54 | |
| 8 | 1/4/2016 correspondence from Legal Aid to SLS | 55 | |
| 9 | 1/6/2016 correspondence from Legal Aid to SLS | 56-57 | |
| 10 | 1/6/2016 acknowledgment letter from SLS to Legal Aid | 58 | |
| 11 | 1/7/2016 acknowledgment letter from SLS to Legal Aid | 59 | |
| 12 | 1/19/2016 response letter from SLS to Legal Aid regarding the 1/4/2016 and 1/6/2016 correspondence | 60-113 | |
| 13 | 1/19/2016 letter from SLS to Plaintiff enclosing the January 2016 Modification Offer | 114-128 | |
| 14 | 1/20/2016 letter from SLS to Plaintiff regarding the January 2016 Modification | 129-139 | |
| 15 | 3/8/2016 letter from SLS to Plaintiff regarding attorney representation notice | 140 | |
| 16 | 3/22/2016 letter from SLS to Legal Aid | 141 | |
| 17 | 4/29/2016 Denial letter from SLS to Plaintiff regarding a subsequent modification offer | 142-152 | |
| 18 | 5/10/2016 letter from SLS to Plaintiff | 153 | |
| 19 | 5/12/2016 correspondence from Legal Aid to SLS | 154-155 | |
| 20 | 5/20/2016 correspondence from Legal Aid to SLS | 156-157 | |

| 21 | 5/23/2016 acknowledgment letter from SLS to Legal Aid | 158 | |
| 22 | 6/20/2016 response letter from SLS to Legal Aid regarding the 5/12/2016 and 5/20/2016 correspondence | 159-272 | |
| 23 | 11/28/2016 correspondence from Plaintiff's Counsel to SLS | 273-280 | |
| 24 | 12/15/2016 response letter from SLS to Plaintiff's Counsel regarding 11/28/2016 correspondence | 281-282 | |
| 25 | 12/19/2016 correspondence from Plaintiff's Counsel | 283 | |
| 26 | 12/20/2016 correspondence from Plaintiff's Counsel to SLS | 284-285 | |
| 27 | 1/24/2017 response letter from SLS to Plaintiff's Counsel regarding the 12/19/2016 and 12/20/2016 correspondence | 286-292 | |
| 28 | 1/17/2017 correspondence from Plaintiff's Counsel to SLS | 293-297 | |
| 29 | 2/16/2017 response letter from SLS to Plaintiff's Counsel regarding the 1/17/2017 correspondence | 298-393 | |
| 30 | 4/11/2017 response letter from SLS to Plaintiff's Counsel regarding the 3/1/2017 correspondence | 398-414 | |
| 31 | Copy of the docket in the underlying foreclosure action | N/A | |
| 32 | 12/22/2015 Motion to Reschedule to Foreclosure Sale | N/A | |
| 33 | 3/2/2015 Final Judgment of Foreclosure | N/A | |
| 34 | Executed Copy of the 2017 Loan Modification signed by Plaintiff and SLS | 415-435 | |
| 35 | April 19, 2017 Email From Plaintiff's Counsel to SLS's counsel | 436-442 | |
| 36 | Deposition transcript of SLS Representative Fred Korb | 443-548 | |
| 37 | Deposition transcript of Mary Johnson | 549-633 | |
| 38 | Deposition transcript of Karen Weaver | 634-685 | |
| 39 | Audio Recordings of conversations between SLS and Mary Johnson/Karen Weaver | N/A | Completeness; Foundation. |

# EXHIBIT B

## DEFENDANT'S WITNESS LIST

| No. | NAME | DESCRIPTION |
|-----|------|-------------|
| 1 | Mary Johnson | Plaintiff |
| 2 | Karen Weaver | Jacksonville Area Legal Aid – Former Employee |
| 3 | Lynn Drysdale | Plaintiff's Counsel, author of several correspondence to SLS at issue in this case, and Current Employee of Jacksonville Area Legal Aid |
| 4 | Jeffrey Golant | Plaintiff's Counsel and author of several correspondence to SLS at issue in this case |
| 5 | Laura Ollier | SLS Corporate Representative |

1322486.1

# EXHIBIT C



# EXHIBIT LIST

___ Government  _X__ Plaintiff___ Defendant   ___ Court

Case No.  3:16-cv-00178-J-MCR

Style:   **Mary R. Johnson v. Specialized Loan Servicing, LLC**

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections / Stipulated Admissions[1] | Description of Exhibit |
|---|---|---|---|---|---|
| 1. | | | Plaintiff | Relevance | SPS letter regarding wrong Notice of Error address |
| 2. | | | Plaintiff | | JALA Notice of Error dated May 20, 2016 |
| 3. | | | Plaintiff | | JALA January 4, 2016 Notice of Error sent to state foreclosure counsel |
| 4. | | | Plaintiff | | JALA Consumer Financial Protection Bureau online complaint by Karen Weaver with attachments |
| 5. | | | Plaintiff | | JALA appeal of the loan modification denial |
| 6. | | | Plaintiff | | SLS' Interrogatory Response |
| 7. | | | Plaintiff | Settlement Communication | Email correspondence between Lynn Drysdale and foreclosure counsel |
| 8. | | | Plaintiff | | Plaintiff's mortgage statement February 20, 2017 |
| 9. | | | Plaintiff | Hearsay; Authenticity; Foundation; Relevance. | Mailing Record and postage receipt for March, 2017 Notice of Error |
| 10. | | | Plaintiff | | January 17, 2017 Notice of Error (Date in exhibit in error) |
| 11. | | | Plaintiff | Relevance. | March 1, 2017 Notice of Error |
| 12. | | | Plaintiff | | November 28, 2016 Notice of Error |
| 13. | | | Plaintiff | Completeness; Illegible in present condition. | Pay History Excerpt |

| | | | | | |
|---|---|---|---|---|---|
| 14. | | | Plaintiff | Relevance. | SLS April 29, 2016 letter denial of Loan Modification asserting January, 2016 application was withdrawn in April, 2016 |
| 15. | | | Plaintiff | | SLS Document confirming inbound document received from borrower |
| 16. | | | Plaintiff | | SLS December 14, 2015 letter denying loan modification after TPP |
| 17. | | | Plaintiff | Authenticity; Hearsay; Foundation. | SLS Parent Complaint Website with Earning presentation |
| 18. | | | Plaintiff | Completeness. | SLS' April 22, 2017 Response to March, 2017 Notice of Error |
| 19. | | | Plaintiff | Completeness. | SLS' December 15, 2015 Response to November, 2016 Notice of Error |
| 20. | | | Plaintiff | Completeness. | SLS' June 20, 2016 Response to JALA's Notices of Error |
| 21. | | | Plaintiff | | JALA's opposition to foreclosure Plaintiff's motion to re-set foreclosure sale |
| 22. | | | Plaintiff | | SLS Exhibits responsive to Deposition notice – Bates Stamp Number 88 – 118 |
| 23. | | | Plaintiff | | Signed Return Receipt for November, 2015 loan modification documents |
| 24. | | | Plaintiff | | Foreclosure Court Plaintiff's December, 2015 Motion to Re-set foreclosure sale |
| 25. | | | Plaintiff | Relevance; Completeness; Authenticity; Foundation; Hearsay. | Lynn Drysdale/paralegal time records – state court foreclosure, not for purposes of fee computation |

---

[1]Use a code (e.g. "A or "*") in this column to identify exhibits to be received in evidence by agreement without objection. Otherwise, specifically state each objection to each opposed exhibit. Please note that each date box on the left must be one inch wide to accommodate the Clerk's date stamp.